IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                            )
TINA CAIJIGAL,              )
                            )
         Plaintiff,         )
                            )
     v.                     )    Civ. No. 17-00478 ACK-RLP
                            )
NANCY A. BERRYHILL,         )
Commissioner of the         )
Social Security             )
Administration              )
                            )
         Defendant.         )
                            )
```

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION

For the reasons below, the Court AFFIRMS the administrative law judge's denial of benefits and supplemental security income to Plaintiff.

## BACKGROUND

On January 30, 2014, Plaintiff Tina Cajigal (formerly known as Tina Young) filed an application for a period of disability and for disability insurance benefits. Administrative Record ("AR") 66; see also AR 21, 75. Plaintiff also protectively filed a Title XVI application for supplemental security income on March 26, 2014. AR 21, 164. In both applications, Plaintiff alleged disability beginning May 3, 2012. AR 66, 162, 164.

Plaintiff's claims were initially denied on September 25, 2014, AR 66-74, and upon reconsideration on February 26, 2015. AR 91-103. Thereafter, on March 10, 2015, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"), AR 121, and a hearing was held on May 26, 2016, AR 134. On June 27, 2016, the ALJ issued a written decision finding Plaintiff not disabled. AR 18-30. Plaintiff filed a request with the Appeals Council to review the ALJ's decision on August 23, 2016. AR 160-61. The Appeals Council denied her request and adopted the ALJ's decision as the final decision of the Commission on July 21, 2017. AR 1-4.

Plaintiff filed her complaint on September 22, 2017, seeking a review of the denial of her applications. ECF No. 1. On May 1, 2018, Plaintiff filed her opening brief ("Op. Br."). ECF No. 17. Defendant, the Acting Commissioner of Social Security ("Commissioner"), filed her answering brief on May 18, 2018 ("Ans. Br."). ECF No. 20. Plaintiff filed her reply brief on May 25, 2018 ("Reply Br."). ECF No. 21.

The Court has scheduled a hearing on Plaintiff's requested review of the Commissioner's decision at 11:00 a.m. on Wednesday, June 13, 2018.

## STANDARD

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of

Social Security.[1]  A final decision by the Commissioner denying Social Security disability benefits and supplemental security income will not be disturbed by the reviewing district court if the decision is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016); Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).

Moreover, "[i]f the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  Id. (internal quotation marks omitted); McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002) (explaining that if "the record

_____

[1] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm"). This principle recognizes the ALJ's ability "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1098 (9th Cir. 2014).

## DISCUSSION

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); <u>see</u> 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. <u>Tackett</u>, 180 F.3d at 1098.

## I. The SSA's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1003 (9th Cir.

2005); see 20 C.F.R. § 404.1520. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov, 420 F.3d at 1003 (citations omitted in original). The claimant bears the burden of proof as to steps one through four, but the burden shifts to the Social Security Administration at step five. Tackett, 180 F.3d at 1098.

At step one, the ALJ considers a claimant's work activity, if any. 20 C.F.R. § 404.1520(a)(4)(i). Where the ALJ finds the claimant is engaged in substantial gainful activity, he will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is work that is defined as both substantial—i.e. work activity involving significant physical or mental activities—and gainful—i.e. work activity done for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. Tackett, 180 F.3d at 1098.

Step two requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Only if the claimant has an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities" will the analysis

proceed to step three.  20 C.F.R. § 404.1520(c).  If not, the

ALJ will find that the claimant is not disabled and the analysis

ends.  20 C.F.R. § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also

considered at step three.  20 C.F.R. § 404.1520(a)(4)(iii).

There, the ALJ determines whether a claimant's impairments meet

or medically equal the criteria of an impairment specifically

described in the regulations.  Id.; see also 20 C.F.R. Part 404,

Subpart P, App. 1.  If the impairments do meet or equal these

criteria, the claimant is deemed disabled and the analysis ends.

20 C.F.R. § 404.1520(a)(4)(iii).  If not, the analysis proceeds

to step four.  20 C.F.R. § 404.1520(e).

At step four, the ALJ determines the claimant's

residual functional capacity ("RFC").  Id.  An RFC is the most

the claimant can still do in a work setting despite her physical

and/or mental limitations.  20 C.F.R. § 404.1545(a)(1).  In

assessing a claimant's RFC, the ALJ will consider all of the

relevant evidence in the claimant's case record regarding both

severe and non-severe impairments.  20 C.F.R. § 404.1545.  This

assessment is then used to determine whether the claimant can

still perform her past relevant work.  20 C.F.R. § 404.1520(e).

Past relevant work is defined as "work that [the claimant has]

done within the past 15 years, that was substantial gainful

activity, and that lasted long enough for [the claimant] to

learn to do it." 20 C.F.R. § 404.1560(b)(1). The ALJ will find that the claimant is not disabled if she can still perform her past relevant work, at which point the analysis ends. Otherwise, the ALJ moves to step five.

At the fifth and final step, the ALJ will once again consider the claimant's RFC—along with her age, education, and work experience—in order to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." 20 C.F.R. § 404.1560(c)(2). If the claimant is unable to perform other work, she is deemed disabled; if she can make an adjustment to other available work, she is considered not disabled. 20 C.F.R. § 404.1520(g)(1).

## II. The ALJ's Analysis

### a. Steps One, Two, and Three

At step one, the ALJ found that Plaintiff had not engaged in gainful activity since May 3, 2012, the alleged onset date, and at step two, that she suffered from the following severe impairments: post laminectomy syndrome in the lumbar spine and degenerative lumbar disc disease. AR 23. At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1. AR 24. Plaintiff does not contest the
findings the ALJ made at these steps.

### a. Steps Four and Five

At steps four and five, the ALJ determined that
Plaintiff has the RFC to perform light work. AR 24. The ALJ
found that Plaintiff "could not climb ladders, ropes and
scaffolds but otherwise would have occasional limitation in
postural movements; she must avoid moderate exposure to hazards;
and she must alternate positions, approximately every 30 minutes
from sitting to standing, and from standing to sitting . . . ."
AR 24. The ALJ further determined at step four that Plaintiff
is unable to perform any past relevant work. AR 28. At step
five, the ALJ concluded that Plaintiff is not disabled because
there is other work she can perform in the national economy.[2] AR
29.

Based on the ALJ's finding that Plaintiff was not
disabled, the ALJ denied Plaintiff's applications for disability
insurance benefits and supplemental security income. AR 30.

---

[2] At step five, the ALJ found that considering Plaintiff's
age, education, work experience, and residual functioning
capacity, there are jobs that exist in significant numbers in
the national economy that Plaintiff can perform. AR 29.

## III.   The ALJ's Development of the Record

Plaintiff contends that the ALJ erred in finding that she could perform light work because the ALJ's decision was based on outdated medical records.  Op. Br. at 20; Reply at 2. According to Plaintiff, the evidence that the ALJ considered was "clearly outdated by a number of years prior to the time of the May 26, 2016 Administrative hearing," and thus the ALJ's decision was not supported by substantial evidence.  Op. Br. at 20.

Courts have explained that "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).  In doing so, the ALJ must fully and fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Where the ALJ finds the evidence ambiguous or the record inadequate, the ALJ may discharge its duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See Tonapetyan, 242 F.3d at 1150 (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

However, "[n]o authority suggests that the regulations require the ALJ to continue developing the record until disability is established; the regulations require only that the ALJ assist the claimant in developing a complete record." Hampton v. Astrue, 2009 WL 2351703, at *11 (D. Or. July 27, 2009) (citation omitted). The ALJ is under no duty to develop the record further where the evidence is unambiguous and the record is adequate. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

Plaintiff contends that the ALJ erred by failing to "request an updated RFC from either Ms. Cajigal's current treating physician (Dr. Jerald Garcia) or . . . an updated RFC to be conducted by an independent physician." Op. Br. at 20. But the ALJ both left the record open for submission of additional evidence and found Plaintiff's condition virtually unchanged from the time of her previous function capacity evaluation and medical examinations. AR 27. Accordingly, "[t]he ALJ was not required to order an updated RFC examination and sufficiently met [her] duty to develop the record by leaving the record open for submission of additional evidence." Garcia v. Astrue, No. C 08-3833 MHP, 2010 WL 1293376, at *6 (N.D. Cal. Mar. 31, 2010).

First, the ALJ left the record open following the hearing to allow for consideration of additional evidence. The

ALJ specifically left the record open to consider Dr. Peter

Diamond's April 15, 2016 report, issued after his March 21, 2016

examination.  AR 27, 51, 63-64.[3]  The ALJ concluded that the

report showed that Plaintiff's condition was "essentially

unchanged" from Dr. Diamond's July 2013 examination and that

Plaintiff's condition was not deteriorating.  AR 27; see

Saavedra v. Colvin, CV 12-5238 AN, 2013 WL 3356041, at *6 (C.D.

Cal. July 3, 2013) (rejecting the claimant's argument that the

ALJ had relied on a "remote and stale" medical opinion, because

claimant had not presented any evidence that his condition had

"worsened in the interval between the two examinations").

        Additionally, despite Plaintiff's argument that the

ALJ should have requested an updated RFC from Dr. Garcia

(Plaintiff's pain management doctor since July 2013, AR 26), the

ALJ considered evidence from Dr. Garcia developed in close

_____

        [3] The hearing testimony shows that Dr. Diamond's report was
the only piece of outstanding evidence that Plaintiff
identified.  AR 51, 63-64; Ans. Br. at 23-24.  Accordingly, the
ALJ decided to "keep the record open for . . . Dr. Diamond's
evaluation."  AR 51.  The ALJ later reiterated that he was
"leaving the record open for the additional information.  After
I get that I'll close the record.  My decision itself will go
out in three or four months with a copy to you and a coy to Mr.
Rego, okay?" AR 63.  Neither Plaintiff nor her attorney
objected, requested to submit additional evidence, or asked that
the record be kept open for a longer period.  AR 63-64.  In
contrast, both Plaintiff and her attorney agreed with the ALJ's
decision and thanked him.  AR 63-64 (Plaintiff stating:  "Okay,
thank you."; Plaintiff's attorney stating: "Thank you very much,
Judge.").

proximity to the hearing. In determining that Plaintiff could perform light work, the ALJ considered Dr. Garcia's May 2015 progress notes, which described Plaintiff as having "acceptable" gait and "acceptable" range of motion in the lumbar spine. AR 27; Ans. Br. at 7. Dr. Garcia's progress notes also recorded Plaintiff's motor strength at 5/5 or "full." AR 27.

The ALJ also considered Dr. Garcia's February 26, 2016 examination. AR 27. This examination, consistent with Dr. Diamond's examination records submitted after the hearing, concluded with Dr. Garcia's opinion that Plaintiff's condition was "relatively unchanged." AR 27. And, as the ALJ noted, this evidence was also consistent with the medical records from Plaintiff's treating physicians, including Dr. Peter Lum.[4] AR 26.

---

[4] To the extent Plaintiff argues that the ALJ placed undue emphasis on the opinions of Dr. Lum and the State agency reviewing physicians, Op. Br. at 20-21; Reply at 2, Plaintiff fails to explain how the these opinions were controverted by the medical record, inconsistent with the record as a whole, or otherwise not entitled to the weight the ALJ placed on them. Ans. Br. at 9-13. Because the ALJ found these opinions consistent with the record as a whole and grounded in a long-term treatment relationship, the ALJ's reliance upon them was consistent with the regulations applicable at the time. See 20 CFR. §§ 404.1457(c)(2)(ii), 416.927(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."); id. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will that opinion.").

In sum, the ALJ found that "there is little change in the examinations since the functional capacity evaluation in January 2013 finding [Plaintiff] capable of light exertion." AR 28; see Tyler v. Colvin, No. 3:15-CV-01879-SI, 2016 WL 4059656, at *6 (D. Or. July 28, 2016) (rejecting argument that RFC was improperly based on outdated medical information where ALJ considered additional evidence and compared prior medical evidence to more recent evidence); see also Youngblood v. Berryhill, No. 3:16-CV-05326-RJB, 2017 WL 6049438, at *3 (W.D. Wash. Feb. 2, 2017) ("[T]hat other medical evidence was produced after the date of the consultants' opinions does not alone render them stale. Instead, the ALJ must evaluate their consistency with the entire record, including any evidence produced after the consultants' opinions were issued.").

The ALJ explicitly left the record open for additional evidence and compared more recent medical opinions with the record as a whole.[5] Under these circumstances, the ALJ had sufficient evidence on which to determine Plaintiff's RFC. Johnson v. Comm'r of Soc. Sec., No. CIV. 11-1268 JRT/SER, 2012

_____

[5] As stated above, the ALJ agreed to keep the record open for one week to allow for consideration of Dr. Diamond's report. AR 51, 63-64; Ans. Br. at 23-24. Neither Plaintiff nor her attorney objected, requested to submit additional evidence, or asked that the record be kept open for a longer period. AR 63-64.

WL 4328389, at *9 (D. Minn. Sept. 20, 2012) ("In sum, the Court finds that the ALJ was not obliged to obtain an updated RFC assessment because the record contained ample evidence to permit an informed decision and that substantial evidence in the record as a whole supports the ALJ's light weight RFC determination."). The Court notes that Plaintiff cites no authority for the proposition that the ALJ was required to order an updated RFC where the ALJ found Plaintiff's condition essentially unchanged.

## IV. Closing the Record Before Electromyography Test and Surgical Consultation

Plaintiff next claims that the ALJ erred by closing the record before Plaintiff had an electromyography ("EMG") and another surgical consultation. Op. Br. at 23; Reply at 1. Although the ALJ permitted Plaintiff to submit Dr. Diamond's supplemental report after the hearing, Plaintiff contends that the ALJ was obligated to keep the record open to consider any post-hearing EMG or surgical consultation. Id. at 23-24. Plaintiff appears to be arguing, as above, that the ALJ failed to fully and fairly develop the record. See Tonapetyan, 242 F.3d at 1150.

Regarding Plaintiff's pending surgical consultation or any future procedures, however, the ALJ stated:

> There is evidence of persisting pain and discomfort despite measures including epidural injections, medication and physical therapy, and I have considered the testimony

14

> that [Plaintiff] was referred for another
> surgical consult and that pain management
> may in the future involve a spinal cord
> stimulator, per her testimony. . . . The
> last surgical consult of record found
> further surgery not warranted.

AR 28. As already stated, "[n]o authority suggests that the
regulations require the ALJ to continue developing the record
until disability is established; the regulations require only
that the ALJ assist the claimant in developing a complete
record." Hampton, 2009 WL 2351703, at *11. The ALJ is under no
duty to develop the record further where the evidence is
unambiguous and the record is adequate. Mayes, 276 F.3d at 460.
The Court's review of the record indicates that the ALJ's
statement is consistent—and Plaintiff's argument is
inconsistent—with the testimony at the hearing and the medical
record as a whole.

Plaintiff seems to mischaracterize the medical record
and her testimony from the hearing. First, in connection with
the purported EMG test referral, Plaintiff testified that she
saw Dr. Diamond in March or April 2016, and that he referred her
to a nerve doctor for "some kind of testing." AR 44-45.
Plaintiff's attorney questioned whether Plaintiff had yet
received Dr. Diamond's report from her March or April visit, to
which Plaintiff replied, "No, I've been asking for it."
However, the ALJ left the record open after the hearing and

specifically considered Dr. Diamond's April 15, 2016 report on
Plaintiff's March 21, 2016 examination.[6]  See AR 27.  The ALJ
found that Dr. Diamond's report showed that Plaintiff's
condition was "essentially unchanged" from Dr. Diamond's July
2013 examination, AR 27, and the Court notes that Dr. Diamond's
report does not seem to mention a referral for an EMG, AR 1102-
1116.[7]

Dr. Diamond's report also opined that Plaintiff is at
"maximum medical improvement, and has not improved materially
since I saw her on 7/15/13, at which time I felt that she was
stable and ratable."  AR 1114.  Under these circumstances, the
ALJ was under no duty to further develop the record as to Dr.
Diamond's supposed referral of Plaintiff for an EMG.

Second, with respect to Plaintiff's surgical
consultation, Plaintiff claims that the ALJ erred when he closed

_____

[6] Again, Dr. Diamond's report was the only piece of
outstanding evidence Plaintiff and her attorney identified at
the hearing.  AR 51, 63-64; Ans. Br. at 23-24.  The ALJ agreed
to keep the record open for consideration of that report, AR 51,
and neither Plaintiff nor her attorney objected, requested to
submit additional evidence, or asked that the record be kept
open for a longer period.  AR 63-64.

[7] Dr. Diamond's report does state:  "The examinee has a new
symptom of headache, associated with nausea and vomiting, which
sound migraine in nature.  I would suggest a neurological
consultation for this.  Although it is unlikely that this is
related to the subject injury, I would defer to the neurologist
on this issue."  AR 1114.

the record despite Plaintiff testifying that she had "a surgical consult pending." Op. Br. at 24; Reply at 1. But Plaintiff's testimony at the hearing belies her current position. Plaintiff testified at the hearing that she "just found out" that "worker's comp had approved [her] in November of last year" for a consultation with a neurosurgeon, but Plaintiff "was not told until [her] last visit last month" to Dr. Garcia. AR 45-46. Plaintiff testified that Dr. Garcia informed her that consultation with a neurosurgeon "was approved in November <u>but it had expired</u>." AR 46 (emphasis added).

Plaintiff did not testify that she had a surgical consultation pending at the time of the hearing. AR 45-47. The ALJ did consider the testimony that Plaintiff had earlier been approved for another surgical consult, but with the time for that allowed consult having expired, the ALJ accurately concluded that "[t]he last surgical consult of record found further surgery not warranted." AR 28.

Plaintiff's testimony indicates that neither a surgical consultation nor an EMG were pending at the time of the ALJ's decision. In contrast, the ALJ kept the record open to allow for the addition of Dr. Diamond's supplemental report, AR 63, which was the only evidence Plaintiff's testimony made clear was forthcoming, AR 44-45. Considering Plaintiff's testimony and the ALJ's reasoning, the Court does not conclude that the

ALJ failed to fully and fairly develop the record.

## V. Whether the ALJ Erred in not Crediting Plaintiff's Testimony at the Hearing

Plaintiff argues that the ALJ erred by discrediting certain of her testimony. Op. Br. at 21-23; Reply at 4-5. In the decision, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision.

AR 25.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Rather, to assess "the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first "determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation and internal quotation marks omitted). Once a claimant satisfies this first step, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only

by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); but see Ans. Br. at 13-14 n.4 (recognizing that the Ninth Circuit's "clear and convincing" standard is binding on this Court but stating the Commissioner's position that it is inconsistent with the deferential "substantial evidence" standard). The ALJ is permitted to use "ordinary techniques of credibility evaluation." Smolen, 80 F.3d at 1284. The ALJ's considerations may include: "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." Molina, 674 F.3d at 1112.

Plaintiff contends that the ALJ ignored testimony—supported by the independent evaluations of Dr. Diamond and Dr. Garcia—confirming her symptoms and limitations. Op. Br. at 22. The ALJ's decision, however, addressed and specifically rejected Plaintiff's testimony on permissible grounds. AR. 27-28; Ans. Br. at 15. The ALJ first found that while there was evidence in the record substantiating Plaintiff's statements that she needed to alternate between sitting and standing every thirty minutes,

the medical record did not substantiate her statements that she
was more limited.  AR 28.

        The ALJ noted that the evidence showed little change
in the examinations since the FCE in January 2013 finding
Plaintiff capable of light exertion, and stated that the last
surgical consultation in the record determined that additional
surgery was not warranted.  AR 28.  Further, the ALJ considered
Dr. Garcia's May 2015 progress notes, which recorded Plaintiff's
motor strength at 5/5 or "full," and February 2016 examination,
which characterized Plaintiff's condition as "relatively
unchanged."  AR 27.  These results, the ALJ found, were
consistent with Dr. Diamond's March 2016 evaluation in which he
opined that Plaintiff was at "maximum medical improvement, and
has not improved materially since I saw her on 7/15/13, at which
time I felt that she was stable and ratable."  AR 1114.  These
inconsistencies between the medical record and Plaintiff's
testimony were a permissible basis on which the ALJ could make a
negative credibility finding.  AR 28; e.g., Osenbrock v. Apfel,
240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming ALJ's
rejection of claimant's limitations and symptoms testimony where
"neither the objective medical evidence of record nor his
subjective complaints warrant a preclusion from at least light
work").

The ALJ also considered Plaintiff's testimony about
her daily activities. AR 28; Tommasetti v. Astrue, 533 F.3d
1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors
in weighing a claimant's credibility, including . . . the
claimant's daily activities."). The ALJ noted that Plaintiff
acknowledged performing limited household tasks like mopping,
and testified to going out for food, visiting family, driving
down the road with her seat reclined "only a little" (and
estimated that she could drive for periods of around twenty to
twenty-five minutes), watching television, and using an I-Pad.
AR 28. This daily activity testimony, the ALJ found, undermined
Plaintiff's testimony regarding her subjective symptoms and the
intensity of her pain. AR 28. And as the Commissioner points
out, Plaintiff has not challenged the ALJ's finding that her
daily activities were inconsistent with her alleged disability.
Ans. Br. at 14, 18. Even if Plaintiff had challenged this
finding, however, the Court concludes that these reasons for
rejecting Plaintiff's testimony were specific, clear and
convincing.

Finally, the ALJ noted that Plaintiff participated in
a vocational rehabilitation program and sought employment. AR
26. Despite Plaintiff's contention that the ALJ's reasoning
"penalized" her for enrolling in the program, Reply at 4,
Plaintiff's participation therein is a proper ground on which to

discredit her subjective pain testimony.  E.g., Macri v. Chater,
93 F.3d 540, 544 (9th Cir. 1996) (affirming ALJ's rejection of
claimant's subjective pain complaints because, among other
things, claimant "completed an electronics training course in
1984 and unsuccessfully sought work in the field").

Considering Plaintiff's testimony about her daily
activities, along with the ALJ's evaluation of the medical
record, the ALJ stated that the RFC determination was "supported
by the nature of the activities of daily living [in which
Plaintiff engaged] and the medical history."  AR 28.  The Court
finds that nothing in the record shows the ALJ arbitrarily
disregarded Plaintiff's testimony in making this determination.

**VI.   Whether the Vocational Expert Testimony was Based Upon
       Improper Hypotheticals**

Plaintiff argues that the ALJ propounded inaccurate
hypothetical questions to the vocational expert ("VE").  Op. Br.
at 25-27; Reply at 8.  At step five of the process for
determining disability, the Commissioner has the burden "to
demonstrate that the claimant is not disabled and can engage in
work that exists in significant numbers in the national
economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).
"The ALJ may meet [her] burden at step five by asking a
vocational expert a hypothetical question based on medical
assumptions supported by substantial evidence in the record and

reflecting all [of] the claimant's limitations, both physical and mental, supported by the record." Id. "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ found that there was evidence substantiating Plaintiff's statements that she needed to alternate between sitting and standing every thirty minutes due to pain, but found that the medical record did not substantiate her statements that she was more limited. AR 28. Plaintiff's testimony that the ALJ found to be unsubstantiated, for example, included her subjective pain testimony regarding shooting pains down her leg and her need to lie down frequently. AR 28, 49. Accordingly, the ALJ determined that Plaintiff had an RFC to perform light work, but "could not climb ladders, ropes and scaffolds but otherwise would have occasional limitation in postural movements; she must avoid moderate exposure to hazards; and she must alternate positions, approximately every 30 minutes from sitting to standing, and from standing to sitting . . . ." AR 24.

Consistent with this determination, the ALJ's first hypothetical to the VE asked: "[A]ssume a person of claimant's age, education and prior work experience who's able to perform light work with no ladders, ropes and scaffolds with occasional postural, and further the individual would need to avoid moderate exposure to hazards. Would such a person be able to perform any of the prior work?" AR 57. The VE answered "Yes, Your Honor, it looks like pretty much all of it would fit. I don't see any reason why not." AR 57.

The ALJ then, incorporating Plaintiff's limitations ultimately found to be substantiated, said: "[I]f we add to hypothetical one [that] the person would have to alternate positions approximately every 30 minutes from sitting to standing and from standing to sitting[,] what impact might that have on the prior work?" AR 57. This hypothetical—which ultimately served as the basis for the ALJ's determination—was appropriately based on the ALJ's interpretation of the evidence in the record as a whole because the ALJ was not required to include limitations found to be unsupported by substantial evidence. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (explaining that an ALJ is not bound to accept limitations that are not supported by substantial evidence); Embrey, 849 F.2d at 422-23 (explaining that hypothetical that ultimately

serves as the basis for the ALJ's determination must be supported by substantial evidence).

After the ALJ posed this hypothetical to the VE, the VE responded that Plaintiff would be unable to perform prior work but could perform:

> [S]it stand jobs like such as a cashier II. This is DOT 211.462-010. It's light work. There are approximately 85,000 such people so employed nationally in a manner that fits the hypothetical, that is, that allows sit, stand option while you're still continuing to work throughout. . . . The second job would be storage facility rental clerk. This is DOT 295.367-026. It's light work, SVP 2 and there are approximately 12,000 such people so employed nationally in a manner, again, that fits the hypothetical. . . . Third job would be arcade attendant. This is DOT 342.667-014. It's light work. It's SVP 2. There are approximately 15,000 such people so employed nationally in a manner that fits the hypothetical. . . . And those are three examples your honor.

AR 57-58.

The ALJ continued to pose various hypotheticals to the VE. AR 56-62. These hypotheticals required the VE to consider the effect of various limitations to which Plaintiff testified on Plaintiff's prospects for employment. Id. For example, the ALJ asked the VE about the employment prospects for an "individual [who] would need to lay down two hours in an eight hour day," and an "individual . . . [who] would be off task 15 percent for a variety of reasons, medication, pain, etcetera . .

. .″ AR 61.  The hypothetical on which the ALJ ultimately

relied, however, included the limitations the ALJ found to be

credible and supported by substantial evidence, and omitted the

limitations the ALJ found unsubstantiated.[8]  AR 57.

The ALJ's reliance on the VE's testimony thus did not

result in error.  Bayliss v. Barnhart, 427 F.3d 1211, 1217-18

(9th Cir. 2005)(recognizing that an ALJ must include all

limitations supported by substantial evidence in a hypothetical

question to the vocational expert, but may exclude unsupported

limitations and disregard VE testimony premised on such

limitations); Hahn v. Berryhill, No. 16-35797, 2017 WL 6139724,

at *1 (9th Cir. Dec. 8, 2017) ("The ALJ properly omitted the

evidence he discounted, and did not provide an incomplete

hypothetical to the VE.  The ALJ's reliance on the VE's

testimony did not result in error.").

Moreover, Plaintiff has not demonstrated any

deficiency in the ALJ's hypothetical questions posed to the VE.

Bayliss, 427 F.3d at 1217-18; see also Osenbrock, 240 F.3d at

1163-64 (holding that an ALJ's hypothetical need not include

_____

[8] For this reason, the hypothetical on which the ALJ
ultimately relied did not require the VE to consider the effect
of Plaintiff's other supposed limitations, such as Plaintiff's
need to lay down for two hours during an eight-hour work day.
E.g., Reply at 8.  The ALJ's hypotheticals need only include all
the limitations supported by substantial evidence.  Bayliss, 427
F.3d at 1217-18.

properly rejected limitations).  For example, Plaintiff argues

that the ALJ's hypotheticals were incorrect because the ALJ did

not make an RFC finding, Op. Br. at 25, but the ALJ explicitly

found that Plaintiff has the RFC to "perform light work as

defined in 20 CFR 404.1567(b) and 416.967(b) except she could

not climb ladders, ropes and scaffolds . . . ; she must avoid

moderate exposure to hazards; and she must alternate positions,

approximately every 30 minutes from sitting to standing, and

from standing to sitting."  AR 24.  The ALJ then incorporated

this RFC and Plaintiff's substantiated limitations into the

hypotheticals propounded to the VE.  AR 57.  Plaintiff's

arguments against the propriety of the ALJ's RFC finding cannot

be repackaged as an argument against the ALJ's hypotheticals.

See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir.

2008) (rejecting a claimant's argument that a hypothetical

question was incomplete when the claimant simply restated her

arguments against the RFC finding).

        Plaintiff also states that the VE:  (1) was precluded

from answering counsel's question regarding a parking lot

attendant job; and (2) did not have access to the medical

records and thus "basically could ignore" Plaintiff's medical

records in answering the hypotheticals.  Op. Br. at 26.

Plaintiff's arguments misapprehend the role of the VE.  At step

five, vocational experts assist ALJs by testifying about: "(1)

what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101. To do so, the ALJ "poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." Id. (quoting Gamer v. Sec'y of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987)). "The ALJ must construct hypotheticals supported by the medical record, and is permitted to disregard Plaintiff's subjective complaints if the ALJ finds such complaints to lack credibility." Jose v. Colvin, No. 16-00072 JMS-KJM, 2016 WL 6476943, at *10 (D. Haw. Nov. 1, 2016) (citation omitted).

With these principles in mind, the testimony at the hearing shows that no error occurred. There, in response to the VE's testimony that Plaintiff could perform cashier II jobs (which are done "typically in a workstation or a booth or a parking lot station," AR 62), Plaintiff's attorney asked:

> I go to parking lots all the time so let's talk about that one. Doesn't the parking lot attendant have to always bend and stand and give tickets out to people[?] They also have to check occasionally the machinery. They have to even sometimes adjust the gates. Could [Plaintiff] do something like that based on her limitations in the record?

AR 62. The VE responded: "Are you talking about, that's not the job I gave." AR 62. And the ALJ then stated: "That's not

28

an appropriate question for the vocational expert. . . . He doesn't have access to the medical records nor is he a medical expert." AR 62-63. Plaintiff's counsel responded, "Oh, I see. You don't have access to the medical records. . . . I'm sorry." AR 63.

First, Plaintiff's counsel's question—"Could [Plaintiff] do something like that based on her limitations in the record?"—is not a proper question for a VE, who responds to an ALJ's hypotheticals rooted in the ALJ's evaluation of the medical record. E.g., Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982) ("The [ALJ] weighs the evidence for probity and credibility. The [VE] merely translates factual scenarios into realistic job market probabilities."). The VE has no independent authority to decide which limitations in the record are substantiated and which are not. Wallace v. Barnhart, 62 F. App'x 823, 826 (9th Cir. 2003) ("The vocational expert's role is to translate factual scenarios into realistic job market probabilities, . . . not to evaluate medical evidence.") (citation and internal quotation marks omitted); see also Sample, 694 F.2d at 644 (explaining that determining the validity of medical opinions is a "function . . . uniquely within the ambit of the ALJ . . . .").

Second, the ALJ's response—that the VE does not have access to the medical record—is accurate and reflects that the

ALJ's hypotheticals, where properly framed, include the limitations the ALJ finds substantiated by the medical record. Cf. Williams v. Astrue, No. CV 09-1278-MO, 2011 WL 1059124, at *4 (D. Or. Mar. 21, 2011), aff'd sub nom. Williams v. Comm'r of Soc. Sec. Admin., 494 F. App'x 766 (9th Cir. 2012) ("[I]ndependently reviewing and interpreting medical reports is precisely the ALJ's function.  20 C.F.R. § 404.1527(e).").

    Additionally, as the VE attempted to clarify at the hearing, the VE never suggested that Plaintiff could perform work as a "parking lot attendant."  The VE instead opined that Plaintiff could perform cashier II jobs (which are done "typically in a workstation or a booth or a parking lot station," AR 62).  Plaintiff's attorney's question was thus inaccurate, leaving aside any other considerations.

    In sum, the VE answered complete hypotheticals based on Plaintiff's age, education, work experience, and RFC.  The exclusion of a single question about a single type of employment disconnected from the VE's actual testimony (such as Plaintiff's attorney's aforesaid question about parking lot attendants) and dependent on an analysis of the medical record does not show that the ALJ erred.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's denial of benefits and supplemental security income to Plaintiff.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, June 15, 2018.



Alan C. Kay
Sr. United States District Judge

Cajigal v. Berryhill, Civ. No. 17-00478 ACK-RLP, Order Affirming Administrative Law Judge's Decision.